UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEONTE GORDON, #308075,

       Plaintiff,                                Hon. Robert J. Jonker

v.                                                    Case No. 1:19-cv-603

UNKNOWN TOWNS, et al.,

       Defendants.
_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 26). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be granted in part and denied in part.

**BACKGROUND**

Plaintiff is presently incarcerated at the Carson City Correctional Facility (DRF). The events giving rise to this action occurred at DRF as well as the Marquette Branch Prison (MBP) and the Earnest C. Brooks Correctional Facility (LRF). Plaintiff initiated this action against: (1) Prison Counselor Fred Govern; (2) Corrections Officer (CO) Unknown Palmer; (3) CO Unknown Zavala; (4) CO Unknown McMurphy; (5) CO Unknown Maurer; (6) Food Service Worker Unknown Town; and (7) Transfer Coordinator Jane/John Doe. Plaintiff alleges the following in his complaint.

Plaintiff is a Buddhist and adheres to Buddhist dietary laws, which mandate a vegan diet. The MDOC provides a vegan diet at several of its facilities, including LRF and DRF, but not MBP. On October 6, 2017, Plaintiff was approved to participate in the MDOC's vegan meal program. Later that month, Plaintiff was transferred to LRF because the facility where he was then housed did not offer vegan meals. On July 23, 2018, Defendant Doe made the decision to transfer Plaintiff to MBP, which does not provide vegan meals.[1]

After arriving at MBP, Plaintiff spoke with Defendant Govern and requested a transfer to a facility that could accommodate his need for vegan meals. Govern responded, "F**k your religious diet, that's the consequence of suing the MDOC." Sixteen days later, on August 8, 2018, Govern arranged to transfer Plaintiff to a different facility. Plaintiff does not indicate where he was transferred to, but on or about October 18, 2018, Plaintiff was transferred to DRF which could accommodate his need for vegan meals. But, from October 20, 2018, through October 30, 2018, Defendant Town deprived Plaintiff of his vegan meals. Finally, for a three-month period beginning November 27, 2018, Defendants Palmer, Zavala, McMurphy, and Maurer conspired to prevent Plaintiff from performing his prison job "solely because of his religious beliefs."

---

[1] This transfer was apparently undertaken so as to comply with an Order of this Court that Plaintiff appear in Marquette for a proceeding in a separate civil matter. (ECF No. 4, PageID.72-73).

Plaintiff alleges that Defendants violated: (1) his First Amendment right to freely practice his religion; (2) his Fourteenth Amendment right to equal protection of the law; and (3) his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA). Plaintiff also asserted various state law claims. On screening, the Court dismissed Plaintiff's RLUIPA and state law claims, but permitted Plaintiff's First and Fourteenth Amendment claims to go forward against all Defendants. (ECF No. 4). Defendants Palmer, Zavala, and Govern now move for summary judgment on the ground that Plaintiff has failed to properly exhaust his claims against them.[2] Plaintiff has responded to the present motion.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by

---

[2] Defendants McMurphy, Maurer, and Town "concede" that Plaintiff has exhausted his claims against them. (ECF No. 27, PageID.135-36).

-3-

admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodide*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id*. With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to ️properly exhaust.️ The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison️s requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. Specifically, this Policy requires that a prisoner, prior to submitting a grievance, attempt to resolve the issue with staff, unless prevented by circumstances beyond his control or the issue falls within the jurisdiction of Internal Affairs. MDOC Policy Directive 03.02.130 ¶ P (July 9, 2007). The prisoner must

attempt to resolve the matter with staff within two days of becoming aware that there exists a grievable issue. *Id.*

If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance, but such must be submitted within five business days after attempting to resolve the matter with staff. *Id.* at ¶ V. The issues asserted in a grievance "should be stated briefly but concisely" and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ FF.

    A.    Defendant Govern

In support of his motion, Defendant Govern has identified three grievances, concerning the relevant period, which Plaintiff pursued through all three steps of the grievance process. (ECF No. 27-2, PageID.152). Two of these grievances, DRF-18-12-3064-17a and DRF-18-10-2779-9z, were asserted against other individuals and, therefore, fail to exhaust any claims against Govern. (ECF No. 27-2, PageID.162-66, 172-75). An examination of third grievance, however, reveals that Defendant Govern cannot satisfy his burden on this affirmative defense.

Plaintiff submitted Grievance MBP-18-08-1059-28e against Defendant Govern and two others alleging that his right to freely practice his religion was denied by the failure to transfer him to a facility that offered vegan meals. (ECF No. 27-2, PageID.170). While it appears that Plaintiff untimely filed his Step II appeal, there is no indication that his Step II appeal was denied on the ground that it was untimely or otherwise violated MDOC policy. (*Id.*, PageID.168-70). The record also contains a Step III determination, indicating that Plaintiff's Step III grievance was "reviewed and considered," but ultimately denied. (*Id.*, PageID.168). It is important to note that the denial of Plaintiff's Step III grievance was not based on untimeliness or any other failure to comply with MDOC policy. According to the document submitted by Defendant, Plaintiff's grievance was simply denied, presumably on the merits.

Defendant Govern nevertheless argues that this grievance fails to exhaust Plaintiff's claims because Plaintiff either (1) "submitted the Step II grievance late and did not wait for a Step II response before submitting to Step III" or (2) "submitted a Step II grievance directly to Step III." (ECF No. 27, PageID.136). The shortcoming in Defendant's argument, however, is that he has presented no evidence to support either of his hypotheses. Instead, the evidence submitted by Defendant clearly states that Plaintiff submitted a Step III grievance that was denied for reasons not articulated in the decision. (ECF No. 27-2, PageID.168). While there may have existed a basis to deny Plaintiff's grievance on grounds of untimeliness or failure to follow some other MDOC policy requirement, Defendant has presented no evidence indicating that

Plaintiff's grievance was denied for such reason. Moreover, as is well understood, this Court cannot enforce MDOC grievance requirements that the MDOC itself refused to enforce. *See, e.g., Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).

Accordingly, the undersigned finds that Defendant Govern cannot satisfy his burden to demonstrate that Plaintiff failed to exhaust the claims in question. Accordingly, the undersigned recommends that Defendant Govern's motion for summary judgment be denied.

B.   Defendants Palmer and Zavala

None of the three grievances discussed above were asserted against Defendants Palmer or Zavala. Plaintiff, however, argues that he pursued a fourth grievance that exhausts his remaining claims against Defendants Palmer and Zavala. The Court is not persuaded.

Plaintiff attached to his complaint, copies of Grievance DRF-18-12-3083-02z. (ECF No. 1, PageID.35-36). Plaintiff initiated this grievance on November 30, 2018, alleging that Defendants Palmer and Zavala conspired to prevent him from attending his prison work assignment. (*Id.*, PageID.35). Plaintiff's Step I grievance was denied. (*Id.*). In response to the present motion, Plaintiff asserts that he submitted his Step II grievance appeal, but prison officials never provided him with a response thereto. (ECF No. 29-1, PageID.193). Plaintiff further asserts that without a response to his Step II grievance, he could not pursue the matter to Step III. (*Id.*).

MDOC Policy, however, expressly provides that a prisoner can appeal a matter to Step III if he fails to receive a response to his Step II grievance. MDOC Policy Directive 03.02.130 ¶ FF (July 9, 2007). Because Plaintiff does not assert that he was otherwise prevented from filing a Step III grievance, he has failed to create a genuine factual dispute on the question whether he properly exhausted his claims against Defendants Palmer and Zavala. Accordingly, the undersigned recommends that Defendants Palmer and Zavala, having met their burden, are entitled to summary judgment.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment (ECF No. 26) be granted in part and denied in part. Specifically, the undersigned recommends that Plaintiff's remaining claims against Defendants Palmer and Zavala be dismissed without prejudice for failure to properly exhaust administrative remedies. The undersigned further recommends that Plaintiff's remaining claims against Defendant Govern proceed forward.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                                Respectfully submitted,

Date: August 20, 2020                      /s/ Phillip J. Green
                                                PHILLIP J. GREEN
                                                United States Magistrate Judge