UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEONTAE GORDON, #308075,

                    Plaintiff,                              Hon. Robert J. Jonker

v.                                                         Case No. 1:19-cv-603

UNKNOWN TOWNS, et al.,

                    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment (ECF No. 79) and Plaintiff's Motion to Amend Complaint (ECF No. 92).   Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Plaintiff's motion be granted, but that the newly asserted claims therein be dismissed for failure to state a claim, and Defendants' motion be granted in part and denied in part.

## BACKGROUND

Plaintiff is presently incarcerated at the Carson City Correctional Facility (DRF). The events giving rise to this action occurred at DRF as well as the Marquette Branch Prison (MBP) and the Earnest C. Brooks Correctional Facility (LRF).   Plaintiff initiated this action against: (1) Prison Counselor Fred Govern; (2) Corrections Officer (CO) Unknown Palmer; (3) CO Unknown Zavala; (4) CO Unknown Murphy; (5) CO Unknown Maurer; (6) Food Service Worker Unknown Town; and (7) Transfer Coordinator Jane/John Doe.   Plaintiff alleges the following in his complaint.

-1-

Plaintiff is a Buddhist and adheres to Buddhist dietary laws, which mandate a vegan diet.   The MDOC provides a vegan diet at several of its facilities, including LRF and DRF, but not MBP.   On October 6, 2017, Plaintiff was approved to participate in the MDOC's vegan meal program.   Later that month, Plaintiff was transferred to LRF because the facility where he was then housed did not offer vegan meals.   On July 23, 2018, Defendant Doe made the decision to transfer Plaintiff to MBP, which does not provide vegan meals.[1]

After arriving at MBP, Plaintiff spoke with Defendant Govern and requested a transfer to a facility that could accommodate his need for vegan meals.   Govern responded, "F**k your religious diet, that's the consequence of suing the MDOC." Sixteen days later, on August 8, 2018, Govern arranged to transfer Plaintiff to a different facility.   Plaintiff does not indicate where he was transferred to, but on or about October 18, 2018, Plaintiff was transferred to DRF, which could accommodate his need for vegan meals.   But from October 20, 2018, through October 30, 2018, Defendant Town deprived Plaintiff of his vegan meals.   Finally, for a three-month period beginning November 27, 2018, Defendants Palmer, Zavala, McMurphy, and Maurer conspired to prevent Plaintiff from performing his prison job "solely because of his religious beliefs."

---

[1] This transfer was undertaken to comply with an Order of this Court that Plaintiff appear in Marquette for a proceeding in a separate civil matter.   (ECF No. 4, PageID.72-73).

Plaintiff alleges that Defendants violated: (1) his First Amendment right to freely practice his religion; (2) his Fourteenth Amendment right to equal protection of the law; and (3) his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA).   Plaintiff also asserted various state law claims.   On screening, the Court dismissed Plaintiff's RLUIPA and state law claims, but permitted Plaintiff's First and Fourteenth Amendment claims to go forward against all Defendants.   (ECF No. 4). Plaintiff's claims against Defendants Palmer and Zavela were subsequently dismissed on exhaustion grounds.   (ECF No. 37, 48).

At this juncture only the following claims remain: (1) Defendant Govern violated Plaintiff's First Amendment rights by refusing to transfer Plaintiff from MBP to a facility which provided vegan meals; (2) Defendants McMurphy and Maurer violated Plaintiff's Fourteenth Amendment rights by refusing to permit Plaintiff to perform his prison work assignment; and (3) Defendant Town refused to provide Plaintiff with vegan meals in violation of his First Amendment rights.   Defendants Govern, McMurphy, Maurer, and Town now move for summary judgment.   Plaintiff has responded to the present motion.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   Whether a fact is "material" depends on "whether its resolution might affect the outcome of the case."   *Harden v. Hillman*, - - - F.3d - - -, 2021 WL 1257802 at *4 (6th Cir., Apr. 6, 2021).

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).   Once the moving party makes this showing, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).   The existence of a mere "scintilla of evidence" in support of the non-moving party's position, however, is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357.   The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).   Likewise, the non-moving party cannot merely "recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."    *Daniels*, 396 F.3d at 735.    Stated differently, the "ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Harden*, 2021 WL 1257802 at *4.

## ANALYSIS

### I.    Defendant Govern

Plaintiff alleges that Defendant Govern violated his First Amendment right to freely practice his religion by refusing to transfer Plaintiff from MBP to a facility that provides vegan meals.    The First Amendment to the United States Constitution provides, in relevant part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."    U.S. Const. amend. I.    To establish a violation of his right to freely exercise his religion, Plaintiff must demonstrate that Defendant "has placed a substantial burden on the observation of a central religious belief or practice."    *Hernandez v. Commissioner of Internal Revenue*, 490 U.S. 680, 699 (1989); *see also, Nixson v. Davis*, 2020 WL 1929363 at *3 (S.D. Ohio, Apr. 21, 2020).

Plaintiff was transferred to MBP on July 25, 2018.   (ECF No. 80, PageID.376).
Plaintiff was transferred to MBP to comply with an Order of this Court that Plaintiff
appear in Marquette for a proceeding in a separate civil matter.   (ECF No. 4, PageID.72-
73; ECF No. 80, PageID.376).   In his verified response, Plaintiff asserts that he
requested that Govern facilitate his transfer out of MBP once his "court obligation in
Marquette" was satisfied.   (ECF N0. 89, PageID.490).   Govern allegedly responded,
"F**k your religious diet, that's the consequence of suing the MDOC."   (*Id.*).   According
to Plaintiff, Defendant Govern "refused to arrange for Plaintiff's transfer until (14) days
later."   (*Id.*).

On July 26, 2018, one day after Plaintiff arrived at MBP, Defendant Govern was
directed, by MBP's transfer coordinator, "to complete a transfer screen [a.k.a. a Security
Classification Screen Review] for Gordon so that he could be transferred out of MBP as
his court obligation was completed."   (ECF No. 80, PageID.394, 396).   Govern complied
with this request that same day.   (ECF No. 80, PageID.394, 397).   According to Govern,
"once the Security Classification Screen is completed, the final transfer is arranged by
the facility Records Office/Transfer Coordinator."   (ECF No. 80, PageID.394).   Govern
further asserts that once he completed the Security Classification Screen Review, he had
"no involvement" in the process by which Plaintiff's transfer was accomplished or
completed.   (ECF No. 80, PageID.394).   On August 6, 2018, Plaintiff's transfer from
MBP was approved.   (ECF No. 89, PageID.512).   This evidence establishes that to the
extent Plaintiff remained at MBP after July 26, 2018, and was, therefore, deprived of

vegan meals, such was not the result of any action or inaction by Defendant Govern. Plaintiff's argument to the contrary is unpersuasive.

In support of his motion for summary judgment, Defendant Govern submitted a copy of the Security Classification Screen Review he completed on July 26, 2018. (ECF No. 80, PageID.397). Plaintiff has also submitted a copy of the Security Classification Screen Review form Govern completed. (ECF No. 89-1, PageID.510). Plaintiff argues that the document submitted by Defendant was fabricated in an attempt to cover-up his unlawful conduct. Plaintiff asserts that the form he submitted is the "real" form and demonstrates that Govern waited, until August 6, 2018, to take action to facilitate his transfer thereby ensuring that he was unable to receive vegan meals for approximately two weeks. (ECF No. 89, PageID.490).

Plaintiff's argument is premised on differences in the information contained in the forms each submitted. Both forms identify July 26, 2018, as the "date entered." (ECF No. 80-4, PageID.397; ECF No. 89-1, PageID.510). The form submitted by Plaintiff lists "Marquette Branch Prison" as the "Institution" where Plaintiff is housed and identifies August 6, 2020, as the "Date." (ECF No. 89-1, PageID.510). The form submitted by Defendant Govern lists "Charles Egeler Reception" as the "Institution" where Plaintiff is housed and identifies October 7, 2020, as the "Date." (ECF No. 80-4, PageID.397).

According to Plaintiff, the form submitted by Defendant Govern was not created until October 7, 2020, well after the initiation of the present action, and represents an attempt by Defendant to fabricate the date on which he acted to facilitate Plaintiff's

-7-

transfer from MBP.   Plaintiff further argues that the form he submitted, the "real" form Defendant Govern generated, was not created until August 6, 2020, and, therefore, establishes that Govern failed to take action until August 6, 2018, to facilitate his transfer.   Plaintiff misunderstands, however, what the dates in question signify and how these forms are generated.

Defendants have submitted an affidavit executed by Jenny Moyle, the Transfer Coordinator at MBP during the time period at issue.   (ECF No. 91-2, PageID.560-64). In her affidavit, Moyle asserts the following.   Regarding the Security Classification Screen Review form, the "Date Entered" box corresponds to the date on which the form is "originally entered."   The "Date" box on the form corresponds to the date on which the form is subsequently accessed electronically.   The "Date" field "populates automatically" when the form is accessed electronically.   Likewise, the information in the "Institution" field "populates automatically" when the form is accessed electronically.

As Plaintiff asserts, the form he submitted is the one maintained in his MDOC record as evidenced by the fact that it is signed by the official who approved Plaintiff's transfer from MBP.   Accordingly, this form shows a "Date" of August 6, 2018, which reflects the date that the official who approved Plaintiff's transfer printed the document. Likewise, this form has "Marquette Branch Prison" in the "Institution" box reflecting that as of August 6, 2018, Plaintiff was housed at MBP.

-8-

As for the form submitted by Defendant Govern, it contains different information in the "Date" and "Institution" fields because Govern did not submit a copy of the form maintained in Plaintiff's MDOC files, but instead simply printed a copy of the electronic version of the form.   Matthew Bush, who in October 2020 was serving as the Litigation Coordinator at MBP, has submitted an affidavit further explaining this distinction. (ECF No. 91-3, PageID.566).

As Bush explains, the "original copy" of Plaintiff's Security Classification Screen form, a copy of which Plaintiff submitted, is stored in Plaintiff's "Record Office file." This original copy "is in hard copy and follows the prisoner when they transfer."   As of October 2020, Plaintiff was not housed at MBP, but was instead housed at the Charles Egeler Reception Center.   Because Plaintiff was not located at MBP at that time, Bush could not access the "original copy" of the form in question.   Instead, he had to access the electronic version in response to a request by Defendant's attorney.   When he accessed the electronic version, the "Date" and "Institution" automatically populated, as explained by Jenny Moyle, to reflect the then current date and location where Plaintiff was incarcerated.

Plaintiff's argument that the differences in the content of the two forms reflects an attempt by Defendant Govern to fabricate evidence is unsubstantiated and is contradicted by the unrefuted evidence discussed above.   Plaintiff fails to understand that forms such as this are stored electronically and can, therefore, be accessed and printed multiple times at different points in time.

Plaintiff's argument also overlooks the unrefuted evidence that Defendant Govern completed Plaintiff's Security Classification Screen on July 26, 2018.   As Jenny Moyle asserted, she emailed Govern on July 26, 2018, and requested that he complete a security screen on Plaintiff so that he could be transferred from MBP.   (ECF No. 91-2, PageID.561).   This assertion is confirmed by the copy of the email Moyle sent to Govern. (*Id.*, PageID.563).   Govern emailed Moyle later that day that the "screen is done." (ECF No. 80 at PageID.394, 396).   This is confirmed by the fact that both copies of the Security Classification Screen form submitted indicate that the form was entered on July 26, 2018.   (ECF No. 80-4, PageID.397; ECF No. 89-1, PageID.510).

In sum, the evidence clearly establishes that on July 26, 2018, Defendant Govern completed a Security Classification Screen to facilitate Plaintiff's transfer from MBP. It is unrefuted that Defendant Govern, after completing the Security Classification Screen form, played no further role in the process by which Plaintiff's transfer was accomplished or completed.   Thus, even if Plaintiff is correct that between July 26, 2018, and August 6, 2018, no action was taken to facilitate his transfer, such is simply not attributable to Govern.   Accordingly, the undersigned recommends that Defendant Govern's motion for summary judgment be granted.

## II.   Defendant Town

Plaintiff alleges that on or about October 18, 2018, he was transferred to DRF, which could accommodate his need for vegan meals.   Plaintiff alleges that from October 18-20, 2018, he was provided vegan meals, but that from October 20, 2018, through October 30, 2018, he was denied vegan meals by Defendant Town.   According to Plaintiff, it was not until he filed a grievance about the matter that his vegan meals were restored.   Plaintiff alleges that Towns' conduct violated his First Amendment right to freely practice his religion.

In support of her motion for summary judgment, Defendant Town has submitted an affidavit in which she asserts the following.   (ECF No. 80-10, PageID.430-32). Town works at DRF as a cook.   In this capacity, she has no discretion or authority to "make additions or changes to" the approved list of prisoners authorized to receive religious meals.   Any changes to this list must be made by the Chaplain or the Food Service Director.   Town is "not permitted to send a religious meal to an inmate until approval is received" and she has no discretion "to send a [religious] meal to someone not on the approved list."   Between October 20, 2018, through October 30, 2018, Plaintiff was not on the list of prisoners approved to receive religious meals.   But once Plaintiff was approved to receive religious meals, he began receiving such.   Defendants have also submitted an affidavit by the DRF Food Service Director, Thomas Lebo, who asserts that "[a]t the time [Plaintiff] was not receiving a vegan meal in October of 2018, [Plaintiff]

was not on the list that is provided to food service to authorize an inmate to receive a vegan meal."   (ECF No. 80-11, PageID.435).

Plaintiff has submitted an affidavit executed by a fellow prisoner, Fredrick Ross-El.   (ECF No. 89-4, PageID.518-19).   In his affidavit, Ross-El asserts the following.   In October 2018, Ross-El worked as a cook at DRF.   In "middle/late October 2018," Ross-El "was notified by a Food Steward" that Plaintiff "was an approved vegan." Accordingly, Ross-El "was instructed to send [Plaintiff's] vegan meals" to Plaintiff's unit. A "couple days later," Defendant Town "instructed [Ross-El] to no longer send [Plaintiff] his meals."   The next day, Town presented "an offender detail. . .that verified that [Plaintiff] was approved to receive vegan meals."   Defendant stated, "[s]omehow this f**ker got staff to print off his offender detail.   I was going to send his trays after I updated the list.   Now he's never getting them."   Town then instructed Ross-El that "if any food stewards instruct [him] to send the meals, then I was to inform them that she (Town), gave [him] an order to not send them."   Town further informed Ross-El that if he disobeyed here order, he "would be fired."

The evidence submitted by Plaintiff, interpreted in a light most favorable to Plaintiff, creates a genuine factual dispute which precludes granting Defendant's motion for summary judgment.   Simply put, Ross-El asserts that Town, knowing that Plaintiff was approved to receive vegan meals, instructed him to not provide them to Plaintiff. Defendant's arguments that Plaintiff's evidence is insufficient are not persuasive.

Defendant argues that Plaintiff did not receive his vegan meals during the time in question because he was "not on the approved list that DRF Food Service uses to determine which inmates were authorized to receive a vegan meal." (ECF No. 91, PageID.544).  Plaintiff's evidence, however, creates a factual dispute on this question. As Ross-El asserts, when Plaintiff first arrived at DRF, he was provided vegan meals which supports the conclusion that Plaintiff was, in fact, on the "official list" to receive such meals.  Defendant Town then allegedly ordered Ross-El to stop providing vegan meals to Plaintiff.  This evidence correlates with Plaintiff's allegations.  Moreover, Defendant's argument that she is entitled to relief because she lacked the authority to update the official religious meal list, is misplaced.  The question is not whether Defendant had the authority to put Plaintiff on the list, but whether she acted to deprive Plaintiff of his vegan meals.  The evidence submitted by Plaintiff supports the conclusion that Defendant acted to prevent Plaintiff from receiving his vegan meals despite being approved to receive such.  Accordingly, the undersigned recommends that Defendant Town's motion for summary judgment be denied.

## III.  Defendants McMurphy and Maurer

Plaintiff alleges that Defendants McMurphy and Maurer violated his Fourteenth Amendment rights by refusing to permit him to perform his prison work assignment in the weight pit.  Specifically, Plaintiff alleges the following.  On November 27, 2018, Plaintiff was informed by Defendants Palmer and Zavala that he "would not be allowed to work, however, he would still get paid."  Palmer and Zavala informed Plaintiff that

"they had reached an agreement with Plaintiff's supervisors [Defendants McMurphy and Maurer] not to allow him to work."

The following day, Plaintiff confronted McMurphy and Maurer about the matter. Maurer told Plaintiff, "we no longer allow Buddhist to work for us. You guys have enough special accommodations as it is." McMurphy then stated, "I concur, so chalk it up. And if you file a grievance you will feel the wrath of DRF staff." Plaintiff alleges that Defendants Maurer and McMurphy refused to let him work "solely due to his religious beliefs." Plaintiff alleges that Defendants violated his Fourteenth Amendment right to "remain free from religious discrimination."

While Plaintiff does not explicitly allege in his complaint that Defendants violated his First Amendment free exercise rights, the Court previously interpreted Plaintiff's complaint as alleging both First Amendment and Fourteenth Amendment claims against Maurer and McMurphy. (ECF No. 4, PageID.75).

A.    First Amendment

Plaintiff alleges that Defendants refused to allow him to work in the prison's weight pit. As previously noted, to establish a violation of his right to freely exercise his religion, Plaintiff must first demonstrate that Defendants "placed a substantial burden on the observation of a central religious belief or practice." *Hernandez*, 490 U.S. at 699. Plaintiff has failed to present evidence that working in the weight pit places a substantial burden on his religious beliefs or practices. Accordingly, the undersigned

-14-

recommends that Defendants Maurer and McMurphy are entitled to summary judgment on Plaintiff's First Amendment claims.

B.    Fourteenth Amendment

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."   U.S. Const. amend. XIV, § 1.   To state an equal protection claim, a plaintiff "must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011).   The Supreme Court has also recognized what is referred to as a "class-of-one" equal protection claims in which the plaintiff does not allege membership in a particular class or group, but instead alleges that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Davis v. Prison Health Services*, 679 F.3d 433, 441 (6th Cir. 2012).

In support of their motion, Defendants have submitted the following evidence. Plaintiff was assigned as a weight pit worker.   (ECF No. 27-2, PageID.167).   This was an "on-call work detail that does not have set hours and days.   It is an 'as needed' detail." (ECF No. 27-2, PageID.167; ECF No. 80-5, PageID.400).   The weight pit is located outdoors on the "Honor Yard."   (ECF No. 80-5, PageID.400).   The Honor Yard is "incentive based, and no prisoner is permitted to attend the Honor Yard if they have

been found guilty of a misconduct within the past 6 months." (*Id.*).   Thus, "any prisoner who is not 6 months misconduct-free would not be eligible to attend Honor Yard itself and would therefore be confined to his unit during the yard/work period."   (*Id.*).

Plaintiff was not permitted to work in the weight pit during the time in question because he had been found guilty of a misconduct violation within the previous 6 months. (ECF No. 80-6, 80-7, PageID.414, 418).   Specifically, Plaintiff had been found guilty of insolence on July 5, 2018, and possession of marijuana on October 10, 2018.   (ECF No. 80-8, 80-9, PageID.421, 425-28).   Moreover, during the time in question, Plaintiff's services were simply not required in the weight pit.   (ECF No. 80-6, 80-7, PageID.414, 418).

Plaintiff argues that he was not required to be misconduct free for 6 months to perform his job in the weight pit.   In support of this argument, Plaintiff has submitted a one-page exhibit that purports to identify those jobs which require a "security clearance" and those jobs characterized as "basic" jobs.   (ECF No. 89-9, PageID.534). Jobs identified as requiring a "security clearance" require that the prisoner "be AT LEAST 6 mos. Ticket free."   (*Id.*).   With respect to the "basic" jobs, this document is silent as to whether the prisoner must be free of misconduct violations.   (*Id.*).

Plaintiff's job was identified as 744W-Recreation Weight Pit, a "basic" job.   (ECF No. 89-8, 89-9, PageID.532, 534).   Plaintiff argues that because the document he submitted does not expressly state that he must be "six-months ticket free," there was no such requirement for his position.   Even if this is the case, Plaintiff has failed to

establish that the evidence presented by Defendants, that Plaintiff was required to be "six-months ticket free" to work in the Honor Yard, is somehow negated by the document he submitted. Moreover, Plaintiff's argument that the "ticket free" requirement applied only to Honor Yard "participants," but not "workers" is unfounded speculation. Finally, Plaintiff has presented no evidence refuting Defendants' assertion that Plaintiff's services were simply not needed during the time in question.

In sum, Plaintiff has failed to present evidence from which a reasonable juror could conclude that Plaintiff was treated differently from any similarly situated prisoner. Likewise, Plaintiff has failed to present evidence that Defendants impaired one of his fundamental rights, took action against him because he is a member of a suspect class, or that Defendants' alleged actions lacked a rational basis. The undersigned, therefore, recommends that Defendants McMurphy and Maurer are entitled to summary judgment.

## IV.    Plaintiff's Motion to Amend Complaint

Plaintiff initiated the present action on July 25, 2019, against several individuals including an unidentified Doe defendant. Plaintiff now moves to amend his complaint to assert two new claims: (1) Defendant Govern retaliated against him in violation of his First Amendment rights, and (2) P. Benison deprived him of the right to freely practice his religion in violation of his First Amendment rights. As Plaintiff asserts, other than adding these two claims, his proposed amended complaint asserts that same claims, based on the same factual allegations, as his original complaint.

Given the timing of Plaintiff's motion, such is governed by Federal Rule of Civil Procedure 15(a)(2) which requires Plaintiff to obtain leave of court which shall be freely given when justice so requires. The factors relevant when considering a motion to amend include: (1) undue delay in filing, (2) lack of notice to the opposing party, (3) bad faith by the moving party, (4) repeated failure to cure deficiencies by previous amendments, (5) undue prejudice to the opposing party, and (6) futility of amendment. *See Wade v. Knoxville Utilities Board*, 259 F.3d 452, 458 (6th Cir. 2001).

The undersigned recommends that Plaintiff's motion to amend be granted, but that the two new claims that Plaintiff seeks to add be dismissed for failure to state a claim on which relief may be granted. In this respect, the Court notes that because Plaintiff has been permitted to proceed as a pauper, the Court has an obligation to review Plaintiffs' new claims to determine whether such are frivolous, malicious, or fail to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2).

A.    Defendant Govern

As discussed above, Plaintiff was transferred to MBP on July 25, 2018, to comply with an Order of this Court that Plaintiff appear in Marquette for a proceeding in a separate civil matter. According to Plaintiff, he requested that Govern facilitate his transfer out of MBP once his "court obligation in Marquette" was satisfied. Govern allegedly responded, "F**k your religious diet, that's the consequence of suing the MDOC." Plaintiff alleges that Defendant Govern "refused to arrange for Plaintiff's

transfer until (14) days later." Plaintiff alleges that this delay was motivated by Govern's desire to retaliate against him.

To prevail on his retaliation claim, Plaintiff must satisfy three elements: (1) he was engaged in constitutionally protected conduct; (2) Govern took adverse action against him which would deter a person of ordinary firmness from continuing to engage in protected conduct; and (3) the adverse action was motivated by Plaintiff's protected conduct. *See Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir. 2010). Plaintiff's claim fails because he cannot satisfy the adverse action element.

As discussed above, Plaintiff failed to establish that Defendant Govern delayed in acting to facilitate his transfer from MBP. To the contrary, the evidence reveals that Defendant Govern acted promptly to facilitate Plaintiff's transfer. Thus, Defendant Govern took no adverse action against Plaintiff. Thus, Plaintiff's retaliation claim must be dismissed for failure to state a claim.

B.     Defendant Benison

Plaintiff alleges that P. Benison is the heretofore unidentified Doe defendant named in his original complaint. As noted above, on or about July 23, 2018, Plaintiff was transferred to MBP, which does not provide vegan meals. Plaintiff alleges that Benison transferred him to MBP in violation of his right to freely practice his religion. As noted above, however, Plaintiff was transferred to MBP because a judicial officer of this Court ordered that Plaintiff appear in Marquette as part of a separate civil case Plaintiff was pursuing. Thus, to the extent Plaintiff's brief transfer to MBP infringed

on his right to freely practice his religion, Defendant Benison cannot be held liable for such. *See Hernandez*, 490 U.S. at 699 (claims alleging denial of the right to freely exercise religion must be asserted against the person whose actions burdened the right in question). Accordingly, this claim must be dismissed for failure to state a claim.

## <u>CONCLUSION</u>

For the reasons articulated herein, the undersigned recommends that Plaintiff's Motion to Amend Complaint (ECF No. 92) be granted, but that Plaintiff's newly asserted claims against Defendants Govern and Benison be dismissed for failure to state a claim. The undersigned further recommends that Defendants' Motion for Summary Judgment (ECF No. 79) be granted in part and denied in part. Specifically, the undersigned recommends that Plaintiff's remaining claims against Defendants Govern, McMurphy, and Maurer be dismissed, but that Plaintiff's First Amendment claim against Defendant Town proceed forward.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C).   Failure to file objections within the specified time waives the right to appeal the District Court's order.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: September 29, 2021

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge